# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA SOTO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-09 Erie |
| | ) | |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**NORA BARRY FISCHER, District Judge.**

## I. INTRODUCTION

Maria Soto ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq.* This matter comes before the Court on cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (ECF. Nos. 9, 11). The record has been developed at the administrative level. (ECF No. 7).[1] For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 9) is granted, in part, and denied, in part, and Defendant's Motion for Summary Judgment (ECF No. 11) is denied.

## II. PROCEDURAL HISTORY

Plaintiff filed her applications on June 30, 2010 and January 18, 2011, claiming disability since April 15, 2010 due to back problems, thyroidism, high blood pressure, and high cholesterol. (R. at 168-177, 191). Her applications were denied (R. at 67-76), and she requested a hearing before an administrative law judge ("ALJ"). (R. at 77-78). A hearing was held on August 17, 2012, during which Plaintiff appeared and testified, and George Starosta, an impartial

---

[1] References to the administrative record (ECF No. 7), will be designated by the citation "(R. at ___)".

vocational expert, also appeared and testified. (R. at 29-52). On August 28, 2012, the ALJ issued a written decision denying benefits. (R. at 16-25). Plaintiff's request for review by the Appeals Council was denied (R. at 1-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). She filed her complaint challenging the ALJ's decision on January 21, 2014 (ECF No. 3), and the parties subsequently filed cross-motions for summary judgment. (ECF Nos. 9, 11). Accordingly, the matter has been fully briefed and is ripe for disposition.

## III. BACKGROUND

### A. General Background

Plaintiff was forty-five years old on the alleged disability onset date. (R. a 24). She was a high school graduate, and had past relevant work experience as a cashier and kitchen helper at a restaurant at Disney World. (R. at 24, 191). On February 18, 2011, Plaintiff completed a Function Report on a form supplied by the Commissioner. (R. at 198-205). Plaintiff reported that she was independent in her personal care, able to prepare meals, and able to perform household chores except when experiencing back pain. (R. at 198-200). Plaintiff further reported that she watched television, visited with others in her home once a week, regularly attended church and doctor's appointments, and shopped for groceries. (R. at 202). Plaintiff described her ability to follow instructions and get along with authority figures as "very well," and she was able to handle stress "with God['s] help." (R. at 203-204).

### B. Medical Background[2]

On February 15, 2011, Plaintiff sought mental health treatment at Safe Harbor Behavioral Health. (R. at 308). She reported suffering from depression for a "few weeks" due to her physical health problems. (R. at 308). She complained of trouble sleeping, self-isolation, frequent crying and racing thoughts. (R. at 308). Plaintiff stated that she occasionally heard voices commenting on her mood, but denied having command hallucinations. (R. at 308). Upon mental status examination, Plaintiff was fully oriented, cooperative, and alert, maintained adequate eye contact and displayed adequate hygiene. (R. at 311). Her speech was soft and

---

[2] Plaintiff does not challenge the ALJ's decision with respect to her physical impairments. Accordingly, the Court confines its discussion to the medical evidence relative to her alleged mental impairments.

2

spontaneous, her affect was appropriate, and her thought processes were organized and relevant. (R. at 311). Plaintiff had some minor memory problems, but she had average intellect, and her insight and judgment were "good." (R. at 311). Plaintiff was assessed with unspecified episodic mood disorder and assessed with a Global Assessment of Functioning ("GAF") score of 50.[3] (R. at 312).

Plaintiff returned to Safe Harbor on March 9, 2011 and reported that she had been mildly depressed since April 2010, when she started having back problems and her work hours were reduced. (R. at 302). Plaintiff reported that her hours were reduced following a downturn in the economy, and she was unable financially to remain in Florida. (R. at 303). She stated that she last worked in March 2010 and left Florida to move to Erie. (R. at 303). Plaintiff reported that she had never been hospitalized, seen a psychiatrist or therapist, or been on psychotropic medication. (R. at 302). She complained of insomnia, frequent crying, and hearing her own voice commenting on her mood, but denied any command hallucinations. (R. at 302). She stated that her energy level was "pretty good." (R. at 302). She reported that she was able to keep up with cleaning, attend church, grocery shop, and spend time with friends. (R. at 302). Plaintiff indicated that she always had company at her house and did not like to be alone. (R. at 302).

During a mental status examination, Plaintiff was alert and fully oriented and cooperative. (R. at 303). She had good grooming and hygiene. (R. at 303). She was pleasant and smiled throughout the session, her speech was spontaneous, clear and coherent, and her thought processes were coherent and appropriate. (R. at 303). Her mood and affect were normal. (R. at 303). Plaintiff's knowledge, intelligence, and vocabulary appeared to be average. (R. at 303). She had good concentration and was not easily distracted. (R. at 303). Her insight, judgment, and impulse control were good. (R. at 303). Plaintiff was assessed with major

---

[3]The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV–TR) 34 (4th ed. 2000). An individual with a GAF score of 41 to 50 may have "[s]erious symptoms (e.g., suicidal ideation....)" OR "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

3

depressive disorder, single episode, mild, and was assessed with a GAF score of 55.[4] (R. at 303-304). Plaintiff's treatment plan included medication and therapy, and she was prescribed Prozac[5] for depression and Remeron[6] for insomnia. (R. at 303). She began therapy the next day. (R. at 301).

On April 19, 2011, Plaintiff reported that her medications were helpful, her mood was "pretty good," she was no longer crying all the time, and she felt less depressed and anxious. (R. at 270). She further reported that she was more active and continued to be sociable. (R. at 270). Plaintiff indicated that she was sleeping better at night, but felt the Remeron was too strong. (R. at 270). On examination, Plaintiff was alert, oriented, displayed good grooming and hygiene, and maintained good eye contact. (R. at 270). Her speech was clear and coherent, her mood and affect were normal, her stream of thought was well-organized and goal oriented, and her impulse control and judgment were good. (R. at 270). She was assessed with a GAF score of 57. (R. at 271). Vistaril[7] was added to her medication regimen, and it was suggested she take half her Remeron dosage. (R. at 271).

Plaintiff returned to Safe Harbor on May 31, 2011 and reported that she did not think her mood was any better, and she suffered from depression "off and on" due to back pain. (R. at 268). Plaintiff further reported that her anxiety symptoms came and went. (R. at 268). She indicated that her sleep varied, mainly due to pain, but she was able clean, take care of her home, and perform light gardening. (R. at 268). Once again, Plaintiff reported to be alert and oriented, her speech was clear and coherent, and her mood and affect were normal. (R. at 268). Her stream of thought was well-organized and goal oriented, and her insight, impulse control and

---

[4] An individual with a GAF score of 51 to 60 may have "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflicts with peers or co-workers)." *Id*.
[5] Prozac (fluoxetine) is a selective serotonin reuptake inhibitor antidepressant, which affects chemicals in the brain that may become unbalanced and cause depression, panic, anxiety, or obsessive-compulsive symptoms. It is used to treat major depressive disorder. *Prozac*, http://www.drugs.com/search.php?searchterm=prozac (last visited Sep. 4, 2014).
[6] Remeron (mirtazapine) is a tetracyclic antidepressant, which affects chemicals in the brain that may become unbalanced and cause depression. It also is used to treat major depressive disorder. *Remeron*, http://www.drugs.com/search.php?searchterm=remeron (last visited Sep. 4, 2014).
[7] Vistaril (hydroxyzine) reduces activity in the central nervous system. It is used as a sedative to treat anxiety and tension. *Vistaril*, http://www.drugs.com/vistaril.html (last visited Sep. 4, 2014).

judgment were good. She was assessed with major depressive disorder, single episode, and assigned a GAF score of 58. (R. at 268-269). Her Prozac dosage was increased. (R. at 269).

When she returned on July 26, 2011, Plaintiff reported doing "okay," but described her mood as "somewhat depressed." (R. at 266). Her mental status examination remained unchanged and she was assigned a GAF score of 56. (R. at 267). Her medications were adjusted. (R. at 267).

On September 23, 2011, Plaintiff complained of increased depression over the past few weeks, and decreased energy, but she was sleeping well at night. (R. at 299). On examination, Plaintiff was alert, oriented, maintained good eye contact and exhibited good hygiene and grooming. (R. at 299). Her speech was clear and coherent, her mood was dysthymic, her stream of thought was well-organized and goal oriented, and her insight, impulse control and judgment were good. (R. at 299). She was assessed with major depressive disorder, single episode, mild, assigned a GAF score of 55, and her Prozac dosage was increased. (R. at 299-300).

When seen on December 16, 2011, Plaintiff reported that she was feeling more depressed due to pain, but noticed an improvement after her Prozac dosage was increased. (R. at 297). She further reported that Visteril made her feel calm. (R. at 297). She was reported as alert, oriented, maintained good eye contact and exhibited good hygiene and grooming. (R. at 297). Her speech was clear and coherent, her mood and affect were normal, her stream of thought was well-organized and goal oriented, and her insight, impulse control and judgment were good. (R. at 297). Her diagnosis remained unchanged, she was assessed with a GAF score of 57, and her medications were continued. (R. at 297-298).

Plaintiff returned to Safe Harbor on March 19, 2012 and reported she was doing well and was less depressed, but complained of trouble sleeping and nightmares about harm to her family. (R. at 294). Her mental status examination remained unchanged, she was assigned a GAF score of 58, and her medications were continued. (R. at 294-295).

On June 13, 2012, Plaintiff reported doing "so-so" due to experiencing back pain which affected her mood. (R. at 306). She indicated that her mood was "as good as it [could] be" and she knew it was related to her back pain. (R. at 306). She was alert, oriented, maintained good

5

eye contact and exhibited good hygiene and grooming. (R. at 306). Her speech was clear and coherent, her mood and affect were normal, she smiled appropriately and was talkative, her stream of thought was well-organized and goal oriented, and her insight, impulse control and judgment were good. (R. at 306). Her diagnosis remained unchanged, she was assessed with a GAF score of 58, and was continued on her medication regimen. (R. at 306-307).

In addition to psychiatric medication management, Plaintiff participated in individual therapy from March 10, 2011 through July 30, 2012. (R. at 291).

### B. Administrative Hearing

Plaintiff testified that she stopped working due to back pain. (R. at 35). Plaintiff stated that when she experienced back pain, she cried and was sad due to an inability to do things. (R. at 41). During the day, Plaintiff watched television, cleaned the house, and spent time with her grown children. (R. at 42-43). Plaintiff claimed that on bad days, however, she cried, nothing was accomplished, and she did not leave the house. (R. at 45-46). Plaintiff claimed she would be "depressed" if criticized by her employer. (R. at 46-47).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was limited to, *inter alia*, occupations not involving high levels of stress, defined as those requiring any kind of decision making, rapid production pace or quotas, or occupations subject to close supervision or close interaction with coworkers, or the general public. (R. at 48). The vocational expert testified that such an individual could perform the jobs of a linen folder, remnant sorter, and garment packer. (R. at 48-49). The vocation expert further testified that no jobs would be available if an individual was regularly off task for more than ten percent of the workday. (R. at 50).

## IV. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v.*

*Parales,* 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

Judicial review of the Commissioner's final decisions on disability claims is provided by statute and is plenary as to all legal issues. 42 U.S.C. §§ 405(g),[8] 1383(c)(3);[9] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

---

[8] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

42 U.S.C. § 405(g).

[9] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura*, 55 F. 3d at 901 (quoting *Richardson,* 402 U.S. at 401). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196-97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center*, 806 F. 2d at 1190-91.

## V. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition. 20 C.F.R. §§ 404.1520; 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v.*

*Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at Step Five to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 15, 2010. (R. at 18). The ALJ further found that Plaintiff's back impairment, major depressive disorder and obesity were severe impairments, but determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1 of the regulations. (R. at 18-20). Despite her impairments, the ALJ found that she had the residual functional capacity ("RFC") to perform light work with certain restrictions, and was limited to occupations not involving high levels of stress, *i.e.*, requiring independent decision making, rapid production pace or quotas, or occupations subject to close supervision, or close interaction with coworkers and the general public. (R. at 20). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing. (R. at 24-25). Again, the Court must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff's challenges relate to the ALJ's residual functional capacity ("RFC") assessment. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a); 416.945(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121. This evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d

Cir. 2001). Moreover, the ALJ's RFC finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because there is no opinion from an examining or non-examining source with respect to her mental functional limitations in the administrative record. In *Biller v. Colvin*, 962 F. Supp. 2d 761 (W.D.Pa. 2013), this Court remanded the claimant's case to the Commissioner after the ALJ formulated the claimant's RFC from his own reading of the record, without relying on the opinion of any other medical professional, stating:

> "Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." *Gormont v. Astrue*, Civ. No. 11-2145, 2013 WL 791455 at *7 (M.D.Pa. Mar. 4, 2013) (citing *Doak*, 790 F.2d at 29). Because they are not treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician:
>
>> ALJs, as lay people, are not permitted to substitute their own opinions for opinions of physicians. This rule applies to observations about the claimant's mental as well as physical health. As the Seventh Circuit stated, "[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." Accordingly, "[a]n ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion." Nor is the ALJ allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.
>
> Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts,* § 6:24 (2013) (citations omitted). Federal courts have repeatedly held that an ALJ cannot speculate as to a Plaintiff's RFC; medical evidence speaking to a claimant's functional capabilities that supports the ALJ's conclusion must be invoked. *See, e.g., Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity

10

from a doctor is required."); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); *Gormont*, 2013 WL 791455 at *8 (collecting cases). Accordingly, the Third Circuit Court of Appeals has found remand to be appropriate where the ALJ's RFC finding was not supported by a medical assessment of any doctor in the record. *See Doak*, 790 F.2d at 27-29 (directing remand because ALJ's conclusion that the claimant had the RFC to perform light work was not supported by substantial evidence in light of the fact that no physician in the record had suggested that the claimant could perform light work while others had reached different conclusions).

*Biller*, 962 F. Supp. 2d at 778-79; *see also Dumond v. Comm'r of Soc. Sec.*, 875 F. Supp. 2d 500, 109-10 (W.D.Pa. 2012) (rejecting Commissioner's argument that ALJ is not required to rely on a medical opinion in formulating a claimant's RFC).

The Court reaches the same result here. A review of the ALJ's decision reveals that the ALJ, in the absence of an opinion from any source with respect to the Plaintiff's mental RFC, simply reviewed the treatment note entries from Safe Harbor and concluded that Plaintiff could perform work not involving high levels of stress, *i.e.*, requiring independent decision making, rapid production pace or quotas, or occupations subject to close supervision, close interaction with coworkers, or the general public. (R. at 22-23).[10] None of these treatment note entries, however, speak to Plaintiff's ability to work, and the ALJ relied solely on his lay analysis of these records. *See e.g., Gunder v. Astrue*, 2012 WL 511936 at *15 (M.D.Pa. 2012) ("Bare medical records without expert medical interpretation are rarely enough to establish a claimant's residual functional capacity."). The Plaintiff's GAF score of 55, which the ALJ accorded "great weight," does not inform on whether Plaintiff has any specific work-related mental limitations,

---

[10] Parenthetically, the Court observes that the ALJ appeared to rely on the lack of a medical source statement with respect to Plaintiff's mental limitations, when he stated "the undersigned notes that no treating source has submitted an opinion indicating that the claimant is disabled, or has specific limitations not reflected in the … residual functional capacity." (R. at 23). However, Plaintiff specifically requested that her treatment provider complete a questionnaire relative to her functional limitations, and the Safe Harbor Privacy Officer stated that the agency did not complete such forms for Social Security disability. (R. at 317). Plaintiff's counsel informed the ALJ of this at the administrative hearing, and further pointed out that there was no opinion from a non-examining state agency medical source opining on Plaintiff's functional limitations. (R. at 51-52). Plaintiff's counsel requested that the ALJ order a consultative examination in order to secure such an opinion, but the ALJ declined to do so. (R. at 16, 51-52).

and Plaintiff's treating sources did not suggest that her GAF score corresponded to her occupational functioning. *Cf. Bracciodieta-Nelson v. Comm'r of Soc. Sec.*, 782 F. Supp. 2d 152, 165 (W.D.Pa. 2011) ("[While] GAF scores can indicate an individual's capacity to work, they also correspond to unrelated factors, and absent evidence that a GAF score was meant to indicate an impairment of the ability to work, a GAF score does not establish disability."). Accordingly, the ALJ's RFC assessment is not supported by substantial evidence, and the matter shall be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion.[11] Because there is no assessment in the record which supports the ALJ's RFC determination, this matter will be remanded to the Commissioner for further proceedings.

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 9) is GRANTED, in part, and DENIED, in part; Defendant's Motion for Summary Judgment (ECF No. 11) is DENIED; and this matter is REMANDED for further consideration by the ALJ, consistent with this Memorandum Opinion.[12]

Appropriate Orders follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

September 4, 2014

cc/ecf: All counsel of record.

---

[11] Plaintiff also challenges that ALJ's credibility determination. In light of the errors identified above, it is anticipated that the ALJ will necessarily reevaluate Plaintiff's credibility on remand.

[12] The ALJ is directed to reopen the record and allow the parties to be heard via submissions or otherwise as to the issue addressed in this Memorandum Opinion. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 800-01 (3rd Cir. 2010).